## CHARLES BUCK *vs.* LEVI A. DOWLEY.

Under the Rev. Sts. *c.* 81, § 8, this court did not have jurisdiction in equity to compel the specific performance of an oral agreement concerning land, even after partial performance thereof.

The general jurisdiction in equity conferred on this court by the *St.* of 1857, *c.* 214, cannot be exercised on a bill filed before its passage.

A bill in equity, filed before the *St.* of 1857, *c.* 214, alleged that the parties made an oral agreement that the defendant should advance the requisite money to purchase a tract of land, and to build warehouses thereon, in consideration that the defendant should be paid from the proceeds all the money so advanced by him, with interest, and five per cent. commission for the use and advancement of the money; that, for greater security, a deed of the land was made to the defendant, which, although absolute on its face, conveyed the land to him as security for the money to be so advanced, and in trust for the plaintiff; that warehouses were erected on the land with money so advanced by the defendant, and money advanced by the plaintiff; that portions of the property were sold, and the proceeds received by the defendant; and that a part of the property remained unsold; and prayed for a conveyance of this part of the property, and for an account. The answer denied the allegations in the bill; and averred that the actual agreement was, that a partnership of which the defendant was a member should advance the money, and receive from the proceeds the amount advanced, with interest, and five per cent. commission for advancement, and six per cent. commission on all amounts received by them therefrom; and that the surplus, if any, should be paid to the plaintiff; and averred performance of the agreement on the part of the defendant and his partner. *Held,* that this agreement did not constitute a partnership between the parties; that it could not be enforced as a trust, nor as a case of constructive fraud; and that the plaintiff could not, without amending his bill, avail himself of the agreement admitted in the answer.

BILL IN EQUITY, filed by Josiah L. C. Amee on the 30th of September 1856, and now prosecuted by his assignee in insolvency, alleging that about the 31st of March 1851 Amee, conceiving that a certain parcel of land in Boston might be purchased, and warehouses erected thereon, and then resold to great profit, and being unable to undertake so large an operation without assistance, proposed to the defendant to advance the moneys necessary to purchase the land and erect the buildings, upon the consideration that the defendant should be paid from the proceeds of the subsequent sales thereof all the moneys so advanced by him, with legal interest, and also a commission of five per cent. for the use and advancement of the moneys; that the defendant agreed to the proposal, and to advance the

moneys necessary in addition to such moneys as Amee might be able to advance from his own means; that thereupon the plaintiff negotiated and agreed with the owner for the purchase of the land for a certain sum, which was advanced and paid by the defendant, and a deed of the land executed to him by the owner for greater security; that, although that deed purported to convey an absolute title to the defendant, yet, by force of the agreement then existing between him and Amee, the defendant did in fact receive and hold the same in trust for the benefit of Amee, and as security for the moneys so advanced and to be advanced according to that agreement; that, after the purchase of the land, Amee proceeded to lay it out in lots, and caused plans thereof to be made, and entered into contracts for the building of nine warehouses thereon, and superintended the same, and paid divers large sums of money on account thereof; and that the defendant, from time to time, advanced other large sums of money, according to that agreement, and received divers sums of money on account of rent of a part of the premises, and from sales of a part thereof; that, before the 13th of October 1852, all the proposed buildings were erected and finished, some of them were sold with Amee's knowledge and consent and the proceeds received by the defendant, and there remained three warehouses unsold; that on that day the defendant rendered an account current, which showed a balance in his favor, and which the plaintiff averred was not a just and true account, but was false and erroneous in many respects, which the bill pointed out; that by force of the agreement aforesaid the defendant received and held the land as trustee for the plaintiff, and in trust, after repayment of all sums of money advanced by him and his said commission thereon, to account with the plaintiff, and to pay over and convey to him what might remain; but that the defendant refused to cause the remaining warehouses to be sold, and insisted that he had a right to hold the same for his own use and in his own right. The bill prayed for a decree that the remaining warehouses should be sold, and for a discovery and account, and for further relief.

The defendant answered, denying that he made the agreement set forth in the bill, or that by force of any agreement existing between the parties he ever held the property as security for moneys advanced as alleged, or in trust for Amee, or that Amee paid large sums of money on account of the building of warehouses on the land ; but admitted an agreement by which he was to purchase the land, and the firm of L. A. Dowley & Company, consisting of the defendant and George F. Butman, were to advance the money to pay for it, and also for building the warehouses, and were to receive in addition to the interest and commission mentioned by the plaintiff, an additional commission of six per cent. on all moneys received from the rents and sale of the land ; that as fast as the land was sold, the proceeds, less the commissions, were to be put to the credit of the account of this undertaking ; and when all the land was sold and the proceeds so credited, the surplus, if any, was to be paid over to Amee, it being expressly understood that the whole account was to be closed by January 1852 ; and averred performance of this agreement on the part of the defendant and his copartner.

The plaintiff filed a general replication; and a hearing was had before *Metcalf,* J., at which the plaintiff offered oral evidence to prove the allegations of his bill, and the case was reserved for the consideration of the full court, upon the terms that if upon so much of the evidence offered as was competent the plaintiff was not entitled to relief, the bill should be dismissed; otherwise, such direction should be given to the case as the court should see fit.

*F. C. Loring,* for the plaintiff.

*B. F. Thomas & R. Olney,* for the defendant.

CHAPMAN, J.    This suit was brought in the year 1856, when the equity jurisdiction of the court was limited.    The plaintiff cannot therefore avail himself of its present general jurisdiction.    *Sanborn* v. *Sanborn,* 7 Gray, 142.    So far then as the bill seeks for the specific performance of a parol contract on the ground of part performance, it is met by the objection that *c.* 81, § 8, of the Rev. Sts., gives the court no jurisdiction of

such cases. *Jacobs* v. *Peterborough & Shirley Railroad*, 8 Cush. 223. So far as it seeks the enforcement of a parol trust respecting real estate, it is met by the objection that no such trust can exist in this Commonwealth, unless it be a resulting trust, which this is not pretended to be. Rev. Sts. *c.* 59, § 30.

It is contended, however, that as the *St.* of 1855, *c.* 194, gave the court jurisdiction in all cases of fraud, the refusal of the defendant to complete the performance of a parol contract, which has been partly performed, may be treated as a constructive fraud, as has sometimes been done by courts having full equity powers, and that on this ground its full performance may be enforced under this statute. But we are of opinion that this statute, like all the other acts conferring limited equity jurisdiction upon the court, is to be construed strictly, and not to be extended by implication. This view of these statutes is stated in *Attaquin* v. *Fish*, 5 Met. 140, and several other cases. And as the court held that it could not take jurisdiction in matters of fraud under its power to enforce and regulate trusts; *Whitney* v. *Stearns*, 11 Met. 319; so it should refuse to enforce the specific performance of parol contracts, by treating the non-performance as a constructive fraud.

It is not necessary to decide whether the court would now, in the possession of full chancery jurisdiction, enforce such performance on the ground of part performance. It is sufficient to say, that when this suit was brought, the court had no power to enforce the specific performance of any contracts, except such as were in writing. The parol evidence which was offered was therefore inadmissible.

Nor can the plaintiff derive any aid from the admissions contained in the defendant's answer. They set forth an agreement variant from that stated in the bill in most of its important particulars; and in order to avail himself of it as the foundation of a decree, the plaintiff should have amended his bill so as to state it; for in equity, as well as at law, there must be allegations as the basis of proofs, and there must be no substantial variance between them. Story Eq. Pl. § 394, note 2 Dan. Ch. Pract. 1000. Even if the agreement stated in the

answer could be taken in connection with the acts of performance stated in the bill, a case would not be made upon which the plaintiff could recover, for it would not appear that such a contract as that has been performed by the plaintiff, or that he has done any acts under it; nor would he be entitled to recover for labor performed, materials provided, or money paid in the erection of the buildings. Without other allegations which are not made, he would not be entitled to a discovery or an account. The idea of a partnership, which was suggested in argument, derives no support from the agreement.

*Bill dismissed.*